In the circuit court of the seventh
judicial circuit, in and for St. Johns
county, Florida

pg. 1

LEGAL MAIL
Provided to Florida State Prison on
or mailing by

Myron Tobler,
    petitioner,

CASE #: CF11-01951

vs.
    State of Florida,
    respondent,

FILED

" amended 3.850 /m/ manifest inj. stice
motion "

" Statements of Facts "

On November 9, 2011 Defendant was charged
by information for first degree felony non-
capital to a burglary while armed with a
firearm occurring on or about October
26, 2011 contrary to Florida statute
810.02 /2/b/, 0777.011, and 775.082
/9/a/29/.
                Defendant filed a motion to
suppress statements on May 7, 2012 /R26-Z7/.
At the August 6, 2013 hearing on the motion
to suppress before the Honorable Wendy
Berger, the following was presented:
                Detective Robert Dean with the
St. Augustine county Sheriff's office testified /T6/
on October 26, 2011, He was assigned to a

pg. 2

Robbery in the West St. Augustine area /T7/.

His supervisor, Sergeant Cole advised him that several people had been transported to the investigations building, who needed to be interviewed /T7/.

At some point during his interview with Defendant, Sergeant Dean say he read him his Miranda rights /T8/. He testified that Defendant waived and consented to giving a statement.

Defendant signed acknowledging the Form and proceeded to speak with him /T8/. The custody rights form that Defendant signed and initialed indicating that he was an adult was entered in evidence /T8-9 · B3Z /.

After Defendant signed of the form, Sergeant Dean conducted an interview of Defendant which was recorded /T9/. During the interview, Defendant clearly placed himself at the scene of the crime /T9/.

On cross-examination, Detective Dean did not recall asking Defendant about his educational history /T10/. He never asked Defendant whether he could read or write english /T10-11/.

Detective Dean know Defendant could speak english based on his lengthy conversation is it Defendant never advised him that he could not read or write /T10/. He never asked the Defendant what the last grade he completed /T12/.

Defendant stated that he understood the Form, and indicated by signing it /T10-11/. When Detective Dean first walked into the

pg. 3

Interview Room, Defendant was sleeping /T11/.

He asked Defendant to sit up and speak with Him /T11/. Each time Detective Dean Returned to the Room after taking various Breaks, Defendant was again sleeping /T11-12/. Defendant told Detective Dean that He was tired /T12/.

Defendant testified that He was sleeping when Detective Dean first came into the Room /T14/. Defendant Did not Recall Being advised of His Rights to Have a Lawyer Present Before He made any statements /T14/.

Detective Dean told Him that Before He could tell Defendant What was going on, He had to sign a paper /T14/. Defendant Did not Really Fully understand What Detective Dean was trying to tell Him other than Defendant needed to sign the paper, Before He could tell Him What was going on or Why Defendant was there /T14/.

Defendant never actually Read the Form /T14/. Defendant Did not understand that By signing that Form He was waiving His Rights to Have an Attorney During Questioning /T15/.

Detective Dean never told Defendant He could Have an Attorney Present at all /T15/. Defendant only Has an eighth Grade educational Back Ground and can only Read a Little Bit /T15/.

Defendant Did not try to Read it /T15/. Defendant Did not ask to speak to a Lawyer, But Kept asking to speak to His mother /T15-16/.

Detective Dean continually Denied His Request to call His mother /T16/. On cross-examination, Defendant admitted to initialing the Box that indicated He was an adult /T16/.

Detective Dean told Him to sign there

pg. 4

to let him know that he was an adult and that before he could tell him what was going on he had to sign the form /T17/.

— Defendant kept letting him Detective Means know that he was tired. He had been up all night /T18/. Defendant remembered Detective Means telling him about the form /T18/.

On September 4, 2012, the trial court entered its written order denying Defendant's motion to suppress /R42-45/. On March 5, 2013 Defendant entered a guilty plea, but reserved the right to appeal the suppression issue /R72, T4-5/.

At the evidentiary hearing Defendant testified that his highest level of education was eighth grade /T15/. Detective Garns testified that Defendant has not fully admitted to his involvement /T8/.

Defendant was interviewed for about nine hours /T9/. He initially denied all involvement but then eventually said that he was a lookout /T11/.

Detective Garns testified that there was no physical evidence that Defendant was ever inside the residence, kicked the door, or even possessed a gun /T10/.

Ground one:
                    The petitioner was arrested without probable cause rendering his detention illegal in violation of his fundamental U.S. constitutional rights per 4th, 5th, & 14th amendment & Fla. state const. article one section 9 due process.

## Statements and Facts:                                      pg.5

1/ No victum or material witness for the offence ever gave sworn testimony or statement that the petitioner Myron Tobler committed a crime on October 26, 2011 the day of the alleged offence. See Alleged affidavits by Andrew Jones / victum exhibits A¹, B affidavits.

"Ulyesse Grace" wrote the statement in the affidavit as evidenced on the continuation of statement of the affidavit in parenthesis Ulyesse Grace just forged the victum name on the affidavit to make it look like the alleged victum provided sworn testimony. This leaves no victum / Andrew Jones ever said Myron Tobler committed any criminal activity.

2/ No detectives / investigators ever saw the petitioner Myron Tobler commit any crimes or conduct criminal activity on 10-26-2011 to give probable cause to arrest the petitioner as the record reflects. See Transcript pg. 10 lines 8-16.

3/ Detectives entered the home of Ms. Baker without her consent and searched the home. In the course of the illegal search the petitioner Myron Tobler's person was seized and arrested. But without a search warrant there was never probable cause to enter the home ¹ seize this mans person. Rendering his detention illegal wherein he never consented to be taken against his will ¹ nothing gave reasonable suspicion

pg. 6

This man was involved in criminal activity. See U.S. Supreme Court in United States V. Mendenball 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L.Ed. 2d 497 (1980).

There the High court stated: "We concluded that a person has been "seized" within the meaning of the 4th amendment only if in view of all of the circumstances surrounding the incident." A reasonable person would have believed that he was not free to leave in which Tabler was not free to leave because he was handcuffed and placed onto the ground". See the transcript of the Suppression Hearing where Ms. Barker testified as a witness that Tabler was handcuffed and placed onto the ground. T31 lines 1-2.

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot as a matter of law amount to a seizure of that person. Id. at 554-55, 100 S. Ct. (1870) plurality opinion (citations and footnote omitted).

This court has similarly provided:

pg. 7

Although there is no litmus-paper test for distinguishing a consensual en-counter from a seizure, a significant iden-tifying characteristic of a consensual encounter is that the officer cannot hinder or restrict the person's freedom to leave or freedom to refuse to answer inquiries and the person may not be detained without a well-founded and articulable suspicion of criminal activity.

This court has consistently held that a person is seized if under the circumstances, a reasonable person would conclude that he or she is not free to end the encounter and depart. Popple, 626 So. 2d at 187-88 citation omitted.

Absent a search warrant describing the place, person or things to be seized, there can be no probable cause to enter Ms. Rifters Home and seize Myron Tobler's person and arrest him.

Absent a sworn testimony by victum or material witness for the offence stating that Myron Tobler damaged or injured person or property and police never witnessed him damage or injure a person or property or commit a crime there is no probable cause to arrest and detain him on 10-26-2011 rendering his detention illegal.

See: Fla. State Const. Article one section nine Due Process.

See: U.S. Const. Fourth Amendment, Fifth Amendment, and Fourteenth Amendment.

Ground two:

Tobler did not make a knowing, intelligent, and voluntary waiver of his Miranda Rights.

STATEMENTS OF FACTS:

The petitioner asserts that he did not make a knowing, intelligent, and voluntary waiver of his Miranda Rights based upon the fact that "Detective Dean told Tobler that he could not tell him what was going on or why he was there, until Tobler sign the Miranda form. See T14 lines 17-22."

How can an officer arrest, detain, and then interrogate Tobler "without" informing him what he was under arrest, or in custody about."

Tobler was denied the constitutional foundation underlying privilege against self-incrimination, as the respect a government, state or federal, must accord to dignity and integrity of it's citizens.

Such as a violation of 13/criminal (law) 110 key 393/1/ per 384 U.S. 436 86 S.Ct. 1602, Miranda v. Arizona and also, 16/criminal law 110 key 393/1/ compelling self-incrimination when individual away from familiar surroundings into police custody surrounded by antagonistic forces and subjected to techniques of persuasion employed by police, cannot be otherwise than under compulsion to speak. U.S.C.A. Const. Amend 5.

Detective Dean testified that he

pg. 9

Read Tobler His Miranda Rights Which was not Before, Because He told Tobler that He could not tellem what was Going on or why was He there, until Tobler sign the Miranda Form. See T14 Lines 17-22.

But clearly in Miranda v. Arizona states that a person, "must", before any questioning be warned that He Has Right to Remain Silent, that any statement He Does make may be used as evidence against Him, and that He Has Right to presence of attorney, Retained or appointed.

But in this case, Tobler was never provided those Rights. Detective Dean told Tobler, that He could not tellem what's Going on, or why was He there, until Tobler sign the Miranda Form. Tobler Did not ask to speak to a Lawyer Because He was not told that He was Able to Have one. T15 Lines 10-11.

But Tobler Did kept Requesting to call His mother in which Detective Dean kept Depriving Tobler of outside support. T16 Lines 1-6.

Criminal Law key 412.1 /4/ once warnings Have Been Given, if individual indicates in any manner, at any time prior to or during questioning, that He wishes to Remain Silent interrogation must cease.

And even if Detective Dean Did Read Tobler His Rights, and with Tobler Requesting to speak to His mother constantly showed that He wishes to Remain Silent, and He Did not want to talk to the police in which Detective Dean violated His Fifth amendment Right

pg. 10

against Self-incrimination.

Prolonged Interrogation:

When Det. Dean Had First walked into the interview Room Tobler, was asleep, T11. Det. Dean asked Tobler to sit down and speak with him T11-T12, where each time Tobler was asleep when Det. Dean took various Breaks.

This Fact in the Record, that sleep deprivation was effectively employed By Det. Dean as a tool illegally to assist Det. Dean in obtaining an incriminating statement From Tobler.

55/criminal Law 110 Key 412.1/4/ voluntary character of statement/interrogation and investigatory questioning/" fact of Lengthy "interrogation or incommunicado incarceration before statement is made is strong evidence that accused Did not validly waive his rights. U.S.C.A. const. Amend 5.

compelling-self-incrimination.
56/criminal Law 110 Key 393/1/ any evidence that accused was threatened, tricked or cajoled into waiver, will show that He/Tobler/ Did not voluntary waive privilege to remain silent. U.S.C.A. Amend 5.

So, Det. Dean and the task force that was assigned to investigate the alleged Robbery while intentionally employing Illegal tactics to get Tobler to actually incriminate himself, knew they were violating the law to garner a conviction.

Therefore the implications Brought to Bear against Tobler as evidence to garner,

pg. 11

A confession were inadmissible in a court of law.

Actually, this violation by Det. Dean and other officers that were in fact monitoring the interview, and or preparing the case, constitutes a civil conspiracy. Anyone who tries to refute the facts on the record are indeed in error to do so.

So in this case, There are numerous facts and or inferences that were made by Det. Dean, that were inherently illegal and coercive by Det. Dean in direct violation of the mandates of MIRANDA V. ARIZONA, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966).

When Det. Dean initiated the coercive tactics upon Tobler, Tobler had been asked in a stale interview room provided for legal questioning and interrogations. The tactics of trickeration, and cajoling of a subject is illegal and violated Tobler's civil, and 4th 5th 6th and 14th amendments of the constitution of the united states.

Therefore, the state lost subject matter jurisdiction to even bring any evidence that was illegally obtained through a coerced confession at the whims of Det. Dean.

The face of the record will show that: Det. Dean made a promise to Tobler that Det. Dean would not tell Tobler what was going on until Tobler signed the waiver of his rights.

Documented Det. Dean presented as an ultimatum. Subsequently the appellant did not knowingly, and intelligently sign the waiver.

pg. 12

During the interrogation, Tobler was suffering from sleep Deprivation, cause He been up all night and Have not slept in three Days Before the interrogation, in which counsel was ineffective for failing to properly investigate and Hire an expert in the field of sleep Deprivation for the suppression Hearing, in which the medical examiner, would Have testified that, Tobler Have not slept in three Days which caused Him to suffer from sleep Deprivation, and that sleep Deprivation could render a confession involuntary entered, since a person might Give in simply, to cease the interrogation, in which means, to say anything not intentionally, But Because of incompetency of Being tired, even though Questions are Being asked, sleep Deprivation could render a confession involuntary, even though they might not agree to the Questioning, and that sleep Deprivation can cause a person to not Be coherent as to what was going on around them.

So this fact in the record, that sleep Deprivation was effectively employed By Det. Dean as a tool illegally, to assist Det. Dean in obtaining an incriminating statement from Tobler.

By using these methods, Det. Dean tricked and coerced Tobler into signing the miranda waiver, By telling Tobler that He would not tell'em what was going on, or why He was there, until Tobler sign the miranda form without Det. Dean Reading Him His Rights. But instead of Reading Tobler His Rights, Det. Dean took advantage of Tobler Because He kept falling

Pg. 13

Asleep He was tired and exhausted. TT8 Lines
1-37.

Compelling - self- incrimination
S6/criminal Law 110 Key 393./1/ any evidence
that Accused was threatened, tricked, or cajoled
into waiver will show that He /Tobler / Did
not voluntary waive privilege to Remain
Silent. U.S. C. A. Amend 5.

The video Recording was Requested to be
Played at the suppression Hearing to notify
Det. Dean improper procedures were illegal.

Tobler Due process Rights were violated
Because the video was not submitted as Requested
to be played, to show proof that, Det. Dean Did not
Read Tobler His Rights Before Tobler signed the
Miranda Form, But yet, Based on an officer statement,
Tobler was convicted and violated of His Due
process Right.

Det. Dean testified that He Read Tobler His
Rights, But the trial court Has yet to show proof
that, Tobler Rights were Read, And Given to Him
properly.

Only conversations Det. Dean Had with
Tobler was captured on audio and video.
See TT Lines 8-10.

But Later, when they finally submitted the
video to the court, which should Have Been played
For the court at the suppression Hearing, they
noticed that the Miranda Rights were not a part
of the Recording Interview.

Criminal Law Key 1771, states that,
presuming waiver from silent Record is
Impermissible, And Record must show, or there

Pg. 14

must Be Allegations and evidence that Accused was offered counsel But intelligently and understandingly Rejected offer.

Tobler, this Proven what the State Has yet to prove, presuming waiver from silent Record is improper/impossible, and record must show, what Tobler has proven, that it's no where in the Record that Det. Dean Read Him His Rights Before Tobler Signed the Miranda waiver, and that Tobler was offered counsel, But intelligently and understandingly Rejected offer, and that His Rights were not Given to Him Properly.

These are the Allegations and evidence, that Accused was not offered a counsel, nor Had the Right to Remain silent and nor was His Rights were Given to Him properly. see T15 Lines 10-11.

Det. Dean Also testified that Tobler signed the Miranda Form on which the State Found that Tobler Rights were voluntarily Given, Because of His Signature Documented on the Miranda Form.

Criminal Law Key 412.7 /31

Statements taken By police in incompl. Miranda Interrogation were inadmissible, in State Prosecution where Defendant had not Been in Any way apprised of His Rights to consult with attorney or to Have one present During interrogation, and His Fifth Amendment Right not to Be compelled to incriminate Himself was not effectively protected in any other manner, even though He signed statement which contained typed in clause that He had full knowledge of His Legal Rights. U.S.C.A. Const. Amend 5.

Criminal Law Key 412.7 /5/                                    Pg. 15

mere FACT that interrogated Defendant signed statement which contained typed in clause stating that He Had Full knowledge of His Legal Rights Did not Approach knowing and intelligent waiver Required to Relinquish constitutional Rights to counsel and privilege against self-incrimination.

Tobler Has an eighth Grade education Back Ground History, and can only read a Little Bit. T15 Lines 14-18. so with Tobler signature stamped on a paper cannot Be used against Him Because the miranda warnings was not Given to Him properly.

Even if this court were to Find that miranda warnings were properly Given, the State still Had the Burden of showing that Appellant's Alleged confession was not compelled But voluntarily made. Ramirez v. State, 739 so. 2d 568, 573 /Fla. 1999/.

moreover, the State Had the Heavy Burden to prove that appellant knowingly and intelligently waived His privilege against self-incrimination and His Right to counsel. Ramirez, at 575, Colorado v. connelly, 479 us. 157, 167, 107 S. ct. 515, 93 L. Ed. 473 /1986/.

To Determine whether appellant validly waived His Rights, the State must prove that 1/ the Relinquishment of Rights were voluntary the Result of Free and Deliberate choice, in Lieu of intimidation, coercion, or Deception and 2/ Appellant waived His Rights "with a Full awareness of Both the nature of the Right Being abandoned and the consequences of the Decision to abandon it." Ramirez, 739 so. 2d at 575.

A court may Determine that miranda

Pg. 16

Rights have been validly waived only if "the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension. Ramirez, at 575.

In this case, the record is devoid of any evidence that would demonstrate that Tobler waived his rights with a full awareness of the rights he was given up and the consequences of giving up those rights.

Instead, it was uncontroverted that Det. Dean told Tobler that he would not tell him why the police were holding him until he signed the form T14 lines 17-22.

No evidence was presented as to what specifically Det. Dean told Tobler about his rights, if anything. The fact that a 20 year old person with no more than an eighth grade education T15 line 14 managed to sign his name on a form where an officer told him to sign T17 lines 7-11 does not demonstrate that Tobler waived his rights with the requisite level of comprehension.

The evidence indicates that the law enforcement officers failed to provide a careful and thorough administration of Miranda warnings, and instead improperly downplayed the significance of the Miranda rights. See Ramirez 739, So.2d at 576.

In lieu of eliciting testimony, the state heavily relied upon the taped interviews during the hearing. The video tapes were submitted for the trial court to review, but never actually played during the hearing. T46.

pg. 17

In the trial court's written order, the trial court specifically stated that the miranda's waiver was not part of the recording interview. T-15.

As such, the trial court had to base his factual findings upon what was actually presented during the hearing.

While the miranda's waiver was not part of the recording interview, based on the testimony presented at the hearing. Defendant's initials on the waiver form next to the box explaining his right to talk to a lawyer, his signature on the bottom of the form, and his demonstrated level of understanding and coherence during the interview, the court finds that Defendant's waiver was knowingly, intelligently, and voluntarily made." T-15.

Since only scant evidence was presented as to what actually transpired during the time Det. Dean ostensibly gave appellant miranda warnings to which appellant allegedly waived, the trial court could only rely on what was actually presented at the hearing.

This evidence amounted to little more than appellant signed the form where he was told and could clearly speak english.

No evidence was presented to indicate that appellant actually read the form T-15, or even understood the form — Just because a person can communicate verbally, it does not mean that he can read or write.

A written form in and of itself does not prove that a defendant's waiver was voluntary. See Ramey v. State, 9 So. 3d 741 / Fla. 2d DCA 2009 /. more significantly, no evidence was presented as to what specific miranda warnings

pg. 18

were read or even when they were given.

To deny Appellant's motion to suppress, the trial court needed competent, substantial evidence that Appellant was warned before any questioning that he specifically had the 1/ right to remain silent, 2./ that any statement he does make may be used as evidence against him, and 3/ that he has right to the presence of an attorney 4 / either retained or appointed. "Miranda at 444.

Without such evidence the trial court's order denying Appellant's motion to suppress can not be upheld.

Miranda warnings are required when a suspect is in custody for interrogation because interrogations is inherently coercive and statements made under these circumstances are inadmissible unless the person is specifically given Miranda warnings and freely decides to waive those rights. Duckworth v. Eagan, 492 U.S. 195, 202, 109 S.ct. 2875, 106 L.Ed.2d 166 / 1989 /.

Miranda was intended to address the coercive effects of interrogation and guard against police techniques likely to hinder a person from making a free and rational decision about speaking. Miranda 384 U.S. at 464-5.

Making sure that law enforcement officers don't use intimidation, coercion or deception in obtaining a waiver serves to protect against false confessions. See Ramirez, 739 so. 2d (A) 576.

So based upon the scant evidence presented and the reliance on a videotape that did not include these relevant conversations, the trial court could not properly determine that Appellant Miranda rights were validly waived.

Pg. 19

The motion to suppress should have been granted.

While the erroneous admission of state-ments obtained in violation of MIRANDA Rights is subjected to the Harmless error analysis, the error was not harmless. MANSFIELD V. STATE, 758 so. 2d. 636, 644 / FLA. 2000/.

Constitutional errors such as the Right to Remain silent are "High Risks errors because there is a substantial likelihood that that meaningful comments will violate the Right to a Fair Trial by influencing the Jury verdict. STATE V. DIGUILIO, 491 so. 2d. 1129, 1136 / FLA. 1986/.

Since Det. Carnes had testified that there was no physical evidence that appellant was ever inside the Residence kicked the door, or even possessed a gun, there is a substantial likely-hood that the admission of appellant's alleged confession could deny Him His Right to Fair Trial by influencing the Jury verdict. The error was not Harmless.

Ground Three:

Trial counsel was ineffec-tive for failing to consult and Have an expert in the Field of sleep Deprivation, for the supp-ression Hearing.

Statement of facts:

The Petitioner Asserts that there was strong evidence that He was suffering from sleep Deprivation during the interrogation T11-T12.

Det. Dean testified that when He first walked into the interview Room, the Defendant

pg. 20

WAS SLEEPING T11.

Each time Det. Dean Returned to the Room After taking various breaks, Tobler was again sleeping T11-T12.

Tobler testified that he was sleeping when the interview began T14 Lines 11-13. He continually told Det. Dean that he was tired and had been up all night T15 Lines 1-3.

The interview/video shows Beyond a Doubt that Tobler's answers were slurred, He Did not understand the questions, and Had trouble staying awake T14-T15. The interrogation lasted nine Hours and eventually Tobler Acquiesced that He was at the scene T8-T11.

But counsel was ineffective for failing to investigate medical evidence and witnesses, Because had counsel investigated properly, of Sleep Deprivation By consulting an expert in that area of science.

The medical examiner could have testified that Tobler have not slept in three Days which caused him to suffer from sleep deprivation, And that sleep deprivation could render a confession involuntary entered, since a person might given simply, to cease the interrogation, in which means, to say anything not intentionally, But Because of incompetency of Being tired,

Even though questions are Being asked, Sleep Deprivation could render a confession involuntary, even though they might not agree to the questioning.

And sleep Deprivation could cause a person to not Be coherent as to what was going on around them, which Tobler kept falling asleep. Each time Det. Dean Returned to the Room After

Pg. 21

After my various breaks, Tobler was again sleeping T11-T12.

This fact to the record that sleep deprivation was effectively employed by Det. Dean as a tool illegally to assist Det. Dean in obtaining an incriminating statement from Appellant Tobler.

§5/ Criminal Law 110 Key 412.1 /4/
voluntary character of statement / interrogation and investigatory questioning /.

"Fact of lengthy" interrogation or incommunicado incarceration before statement is made is strong evidence that accused did not validly waive his rights. U.S.C.A. Const. Amend 5.

Det. Dean did knowingly and intelligently, with a deliberate indifference and total disregard for the appellant's civil and constitutional rights, engage in a civil conspiracy to coerce a confession and subsequent plea of guilty.

(compelling - self-incrimination)
§6/ Criminal Law 110 Key 393/1/  Any evidence that accused was threatened, tricked or cajoled into, waiver, will show that He /Tobler/ did not voluntary waive privilege to remain silent. U.S.C.A. Amend 5.

Det. Dean and the task force that was assigned to investigate the alleged robbery while intentionally employing illegal tactics to get Tobler to actually incriminate himself,

pg. 22

knew they were violating the law to GARNER a conviction.

Therefore the implications Brought to Bear against Tobler, as evidence to GARNER a conviction were inadmissible in a court of law.

Actually this violation By Det. Dean and other officers that were in fact monitoring the interview and/or preparing the case constitutes a civil conspiracy. Anyone who tries to refute the facts in the records are indeed in error to do so.

The Defendant alleges that there was strong evidence that he was suffering from sleep depravation during the interrogation T11-T12.

Det. Dean testified that when he first walked into the interrogation room, the Defendant was sleep T11. each time Det. Dean returned to the room after taking various Breaks, Tobler was again sleeping T11-T12.

Tobler testified that he was sleeping when the interview began T14. He continually told Det. Dean that he was tired and had Been up all night T17-T18.

The interview/video shows Beyond a doubt that Tobler's answer's were slurred, he did not understand the questions, and had trouble staying awake T14-T18.

The interrogation lasted nine hours and eventually Tobler acquiesced that he was at the scene T8-T11. See Faddy v. State, 845 so. 2d 961 /Fla. 4th DCA 2003/ where trial counsel should have obtained a law expert to explain the Relationship of the evidence to Defendant's defense.

so in this case, counsel was ineffective

pg. 23

For, failing to investigate medical evidence and witnesses because he had counsel investigated sleep deprivation, by consulting an expert in that type of science. The medical examiner, would have testified that Tabler, have not slept in 11 pre days before the interrogation, without any rest caused Tabler, to suffer, from sleep deprivation).

Sleep deprivation can cause a person, to be incompetent, not in the right state of mind, in which means, a person caused to not be coherent as to what was going on around them, and that, sleep deprivation could render, a confession, involuntary entered, since a defendant might confess simply, to cease the interrogation, in which means to say anything not intentionally.

But because of being incompetent of being tired, even though questions are being asked, sleep deprivation could render a confession involuntary, even though they might not agree to the question.

Counsel was ineffective because he should have had a medical examiner expert to explain these relationships of the evidence to defendant's defense at the suppression hearing.

If trial counsel had a medical examiner present to explain these issues, the outcome of the suppression hearing would have been different.

Based upon Tabler, confession was captured involuntary, which is a federal offense. Pursuant to SS A.L.B. 2d 512 (originally published in 1957) in violation of U.S.C.A. 1983).

The validity and construction of statutes making officials who coerce or attempt to coerce confessions, or pleas, of guilty a

Pg. 24

Federal Offense.

Compelling - Self - Incrimination
56/Criminal Law 110 Key 393/1/ Any evidence
that accused was threatened, tricked, or cajoled
into waiver will show that He/Tobler/ did not
voluntary waive privilege to remain silent.
U.S.C.A. Amend 5.

Det. Dean and the task force that was assigned
to investigate the alleged robbery while intentionally
employing illegal tactics to get Tobler to actually
incriminate himself, knew they were violating
the law to garner a conviction.

Therefore, the implications brought to bear
against Tobler as evidence to garner a conviction
were inadmissible in a court of law.

Actually this violation by Det. Dean and
other officers that were in fact monitoring the
case constitues a civil conspiracy. Anyone who
tries to refute the facts on the record are indeed
in error to do so.

Det. Dean did knowingly and intelligently
with a deliberate indifference, and total disregard
for the appellant's civil and constitutional
rights, engage in a civil conspiracy to coerce
a confession and subsequent "plea of guilty."

✗ ✗ ✗ Right of Action up held ✗ ✗ ✗
The validity and construction of statutes
making officials who coerce or attempt to
coerce confessions, or pleas, of guilty a
Federal offense.... pursuant to 55 A.L.R.
2d 512/ Originally published in /1957/in
violation of 42 U.S.C.A. §1983.

Ground four.

Trial counsel was ineff-

pg. 25

ective for His cross-examination of Det. Dean,
and for failing to object to the prosecutor's
misconduct of testimony, and for not clarifying
the defendant's testimony by proper redirect.

Statement of Facts:
                                    Petitioner asserts
that His trial counsel was ineffective for His
cross-examination of Detective Dean."
        Trial counsel Had gave erroneous advise,
Based on the fact that, Det. Dean never actually
testified that He read Tobler His Miranda rights,
His responses to questioning were evasive.
        Det. Dean Had testified during direct-exa-
mination that He acknowledged the form to
Tobler T8 lines 10-11.
        but the acknowledgement was that Det.
Dean telling Tobler that He could not tell Him
what was going on or why He was there until
Tobler sign the Miranda form, T14 lines 14-22,
and to initial the form to indicate that He
was an adult T17 lines 8-9.
        Which was stated before any questioning,
And Det. Dean never testified during direct
examination that Tobler understood the form
contents.
        But it is inconceivable that counsel
would cross-examine Dr. Dean and ask is so
the basis for your knowledge as to whether
you think He can read and write is because
He told you that He understood T10 lines 15-17.
        Which Tobler never testified that He under-
stood anything, And Det. Dean never testified
that Tobler understood anything during direct-

pg. 26

examination.

But on cross-examination Det. Dean stated I know He can read Because He stated He understood it and we had a Lengthy conversation in the interview room TIO Lines 12-14.

Ok, Det. Dean I Sed speak that with prompting, But that was pertaining to the conversations, About TOBLER understanding the english Language, Based on those conversation Det. Dean and TOBLER Had amongst each other.

It its clear that TOBLER can speak the english Language Because TOBLER can correspond the english Language.

AND Just Because a person can communicate verbally it does not mean that a person Actually understands.

But for counsel to state, so the Basis For your knowledge as to whether you think, He can Read or write is Because He told you that He understood TIO Lines 15-17.

That Line of Questioning should not have Been spoken Because For one, TOBLER never testified that He understood anything and Det. Dean never testified that TOBLER understood Anything During Direct-examination.

And two, counsel planted a seed on Det. Dean mind in which meant that, you are Freely to make your own opinion, your own Decision Which misleads the Jury, Because that Line of Questioning changed up the whole outcome, that Led to Det. Dean Stating that, TOBLER understood the MIRANDA Form, By the Detective Being Questioned again By the court,                II — Im SORRy.

pg. 27

I Didn't Hear you, T10 Line 23."

Which Det. Dean stated that He never advised whether He could Read or write. He stated He "understood the Form" and He indicated By signing at T10 Lines 24-25, T11 Line 1.

Which counsel should Have objected to that Because Det. Dean switched up into another whole conversation."

The topic was About Tobler understanding the english Language, But not About Tobler understanding the Form of the Miranda Waiver,

which counsel should not have exposed that Line of questioning, About Det. Dean stating that Tobler understood anything. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Counsel made errors so serious that counsel is not Functioning as Guaranteed By the sixth Amendment, and the deficient performance of counsel prejudiced the defense.

Det. Dean testified during Direct examination that He Acknowledged Tobler the Form.

But the Acknowledgement was that He would not tell Tobler what was going on, or While He was there And/or He signed the Miranda Form, T14 Lines 17-22, and to Applaal the Form to indicate that He was an Adult, T17 Lines 8-9.

But on Cross-examination, counsel made errors so serious that He was not Functioning As Guaranteed By the sixth Amendment and, the deficient performance of counsel prejudiced the defense.

But For counsel to state that so the Basises For your knowledge as to whether you

Pg. 28

think He could Read or write as Because He told you that He understood T10 Lines 15-17.

That Line of Questioning should not Have Been exposed cause For one, Tabler never testified that He understood anything, and Det. Dean never testified that Tabler understood anything during Direct examination.

Counsel Had planted a seed in Det. Dean mind in which meant that you are Free to Make your own opinion, or Decission to say whatever, Because that line of questioning changed up the whole outcome, that Led Det. Dean to state that

Tabler understood the Form by the Detective Being Questioned again By the court.

"I'm sorry. I Didn't Hear you." T10 Line 23.

Which Det. Dean stated that He never advised whether He could Read or write. He stated He understood the Form and He indicated By signing at T10 Lines 24-25, T11 Line 1.

Which Det. Dean never testified to the above During Direct examination. But for counsel made errors that was so serious, that He was not Functioning, As Guaranteed By the Sixth amend-ment, counsel was opose to have objected to that Because Det. Dean switched up into another whole conversation.

The topic was about Tabler understanding the english language, But not about Tabler under-standing the Form of the miranda waiver which counsel should not have exposed that line of Questioning, and should Have objected to this line of questioning about Det. Dean stating that Tabler understood the Form which the Defendant

pg. 29

performance of counsel had prejudiced the Defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

counsel was ineffective for failing to object to the prosecutor's misconduct of his testimony at the suppression hearing.

The prejudice prong is evident since counsel failed to object to the states improper questioning as to whether Tobler heard Det. Dean testify that

He read you this form and said you have a right to talk to a lawyer for advise before you make a statement, before or during any questioning.

you heard him testify to that, correct? TT7 lines 12-16.

In which counsel should have objected Because, Tobler was never advised of that TT5 lines 10-11.

Det. Dean say He read Tobler his rights, But didn't specify what rights were given. In which the record is Revealing that Det. Dean is Being untruthful.

If Det. Dean interrogated Tobler for nine hours, from the Beginning to the end, then why isn't the Miranda issue of Det. Dean reading Tobler his rights,

not apart of the recording interview, when Det. Dean had no other conversations with Tobler that was not captured By audio/video TT1 lines 8-10.

By Law, criminal Laws key 1771 which states that, implying waiver from silent record is impermissible, And record must show or, there must Be Allegations And evidence that accused was offered counsel But intelligently and understandingly rejected offer.

pg. 30

So with the prosecutor misconduct of His testimony should not Have Been spoken Because there is no proof on the Record that TABLER was offered counsel and intelligently And understandingly Rejected that offer.

And not Just Because of TABLER's signature on a piece of paper stating that He Had Full knowledge of His Legal Rights. Criminal Law key 412. 2/3/ and also Criminal Law key 412. 2/5/.

Statements taken By police in incommunicado interrogation were inadmissible in state prosecution where Defendant Had not Been in any way appraised of His Rights to consult with Attorney or to Have one present during interrogation, and His Fifth Amendment Right not to Be compelled to incriminate Himself was not effectively protected in Any other manner.

even though He signed statement which contained typed in clause that He Had Full knowledge of His Legal Rights. U.S.C.A. Const. Amend 5.

And also mere FACT that interrogated Defendant signed statement which contained typed in clause stating that He Had Full knowledge of His Legal Rights did not approach knowing and intelligent waiver Required to Relinquish constitutional Rights to counsel and privilege Against self-incrimination.

See: Criminal Law key 412. 2/3/ And Criminal Law key 412. 2/5/.

So if counsel would Have objected to the prosecutor misconduct of His testimony then the prosecutor would not Have tricked And confused TABLER About the improper testimony.

Of what the prosecutor was telling Him about Det. Nunn testimony, that Det. Nunn testified that

pg. 31

He Read Tobler His Rights, in which was a Question, the prosecutor was trying to ask Tobler, on Did He Hear Det. Dean testify about Reading Him His Rights, in which the prosecutor tricked and confused Tobler,

By this misconduct of His testimony, By Him adding His incriminating testimony, By Him actually Reading Tobler His miranda Rights, something Det. Dean did not do before any questioning. Tobler was not told that He could have a Lawyer at all T15 Lines 10-11.

Det. Dean told Tobler that, He would not tell'em what was going on or why the police was holding Him until He /Tobler/ sign the miranda form T14 Lines 17-22.

But on the prosecutor misconduct of His testimony Tobler was only Responding to the Question That

He Heard Det. Dean testify that He Read Him His Rights, what made Tobler say yeah, I Heard Him say that T17 Lines 12-17 in which counsel should have objected and Done a Redirect examination

to clarify that Tobler was not saying yeah to that Det. Dean Read Him His Rights, But that He was saying yeah to that He Heard Det. Dean testify that He Read Him His Rights.

Had counsel objected to the prosecutor's misconduct of His testimony, the outcome of the suppression Hearing would Have Been Different, Because the motion to suppress would Have Been Granted, Because the evidence shows that the miranda warnings was not Given properly.

Counsel made errors so serious that He was not functioning as guaranteed By the Sixth amend-

Pg. 32

ment Because He was a oppose to Have objected to the Prosecutor's misconduct of His testimony.

But for Him not doing so, the Deficient perfor- mance of counsel prejudiced the Defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984).

And counsel was ineffective for not clarifying the Defendant's testimony by proper Redirect.

Just so we are clear, now you do Remember initialing, you Remember checking adult, now you actually Remember Him Reading it?

yeah, I Remember Him telling me about that. T18 lines 6-8.

These lines of questioning and counsel's failure to properly prepare Tobler to testify allowed the state to confuse and trick Tobler onto saying yeah, I Remember Him telling me about it that. T18 line 9.

Counsel should Have objected and Done a Re-direct examination to clarify that Tobler was not saying that He Remember Det. Dean Reading the Form which was never Read Before any questioning. T14-T16.

But only that He speaking of Det. Dean, was telling Tobler that He Had to sign the Document "Before" He was able to tell Him what was Going on or why was He there T14 lines 17-22.

Have counsel exposed the prosecutor and clarifying the Defendant's testimony by proper Re-direct, the outcome of the suppression Hearing would Have Been Different.

The post-conviction court appointed counsel was ineffective for these following

pg. 33

REASONS:

ISSUE I:

Whether the trial court erred in denying Tobler's motion to suppress statements.

There are numerous facts and or inferences that were made by the Detective Robert Dean, in direct violation of the dictates of MIRANDA v. ARIZONA, 384 US. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694 (1966), when Det. Dean instigated the coercive tactics upon appellant, appellant had been asleep in a state interview room provided for legal questioning and interrogations.

The tactics of trickeration, and cajoling of a suspect as illegal and violated the appellant's 1st, and 4th, 5th, 6th and 14th amendments of the constitution of the united states. Therefore, the state lost subject matter jurisdiction to even bring any evidence that was illegally obtained through a coerced confession at the whims of Det. Dean.

*** The face of the record will show that:

1/ Det. Dean. made a promise to the appellant "that Det. Dean would not tell appellant what was going on until appellant signed the waiver of his rights". Document Det. Dean presented as an ultimatum. Subsequently the appellant did not knowingly and intelligently sign the waiver. /14/ CRIMINAL LAW 110 Key 393/1/ "Government seeking to punish individual must produce evidence against him by it's own independent labors, rather than by cruel simple expedient of compelling it from his own mouth" U.S.C.A. CONST. AMEND 5.

pg. 34

/18/ criminal law 110 key 517.1 /1/ Defendants constitutional rights have been violated if his conviction is based in whole or in part, on involuntary confession, regardless of its truth or falsity, even if there is ample evidence aside from confession to support conviction.

Footnote 33: The decisions of this court have guaranteed the same procedural protections for the defendant whether his confession was used in a Federal or State court.

It is axiomatic that the Defendant's constitutional rights have been violated if his conviction is based, in whole or part, on an involuntary confession, regardless of its truth or falsity. Rogers v. Richmond, 365 US. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed. 2d 760 /1961/; Siang Sung Wan v. United States, 266 US. 1, 45 S.Ct. 1, 69 L.Ed. 131 /1924/. This is so even if there is ample evidence aside from the confession to support the conviction. E.g. Malinski v. People of State of New York, 324 US. 401, 404, 65 S.Ct. 781, 783, 89 L.Ed. 1029 /1945/; Bram v. United States, 168 US. 532, 540-542, 18 S.Ct. 183, 185-186 /1897/.

Both state and Federal courts now adhere to trial procedures which seek to assure a reliable and clear,-cut determination of the voluntariness of the confession offered at trial. Jackson v. Denno, 378 US. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 /1964/; United States v. Carignan, 342 US. 36, 38, 72 S.Ct. 97, 98, 96 L.Ed. 48 /1951/; See also Wilson v. United States, 162 US. 613, 624, 16 S.Ct. 895, 900, 40 L.Ed. 1090 /1896/. Appellant review is exacting, see * Haynes v. State of Washington, 373 US. 503, 83 S.Ct. 1336, 10 L.Ed. 2d 513 /1963/; Blackburn v. State of Alabama, 361 US. 199, 80 S.Ct. 274, 4 L.Ed.

pg. 35

2d 742 /1960/.

Whether this conviction was in a federal or state court, the defendant may secure a post-conviction hearing based on the alleged involuntary character of his confession provided he meets the procedural requirements. Fay v. Noia 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 /1963/. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 /1963/. In addition see Murphy v. Waterfront Comm. of New York Harbor 378 U.S. 52, 84 S.Ct. 1594 /1964/.

Z./ Defendant: did knowingly and intelligently with a deliberate indifference and total disregard for the appellants civil and constitutional rights, engage in a civil conspiracy to coerce a confession and subsequent "plea of Guilty".

*** Right of action upheld ***

The validity and construction of statutes making officials who coerce or attempt to coerce confessions or pleas of Guilty a federal offense pursuant to 55 A.L.R. 2d 512 /originally published in 1957/ in violation of 42 U.S.C.A. 8 1983/.

8./B/ Generally - right of action upheld /Cumulative supplement/

* It has been contended in some cases that coercive actions by law enforcement officers in attempting to obtain * confessions are beyond the scope of their authority and are therefore not done under color of law so as to create a right of action under the statute.... A right of action for injunction and damages by the plaintiff a citizen of France residing in the United States against police officers of Georgia was upheld in Refoule v. Ellis /1947/ DC GA /74 F. Supp 336 against a motion to dismiss where it was alleged

Pg 36

that Defendants without a warrant had taken the
Plaintiff into custody on several occasions
Questioning them for/ long periods of time, in an
attempt to coerce his confession to wrongdoade.

The court stated that the acts alleged came
within the exspress prohibitions of the civil Rights
statue noting that the fourteenth amendment pre-
supposed the possibillity of abuse by a state
officer of his power and that the actions of a
Duly qualifieed officer within the scope of his
authority *** constituted state action, even
though the particular acts complained of might
not have been authorized.

The court conceded that reasonable questioning
of a suspect in the custody of police officers
was not prohibited but held that the defendants
might be liable where by arbitrary action under
the color of law they deprive the Plaintiff of
liberty without Due process by the exercise of
personal restraint over them and confinement
without a warrant and resorted to unlawful
means in an effort to coerce a confession.
* The court stated that it was unnecessary to
determine whether viglence had been used by
the defendants against the Plaintiff, or whether
the Plaintiff had voluntarily accompanied the
officers on each occassions, pointing out that
the situation could be regarded as inherently
coercive since the questioning occurred
generally at night and neither the Plaintiff
relatioes nor his attorney knew of his where-
abouts.

        Inadequate Response

                                The answer

Pg. 37

BRIEF OF APPELLEE submitted By ASSISTANT
ATTORNEY GENERAL MS. ANN M. PHILLIPS FLA.
BAR. # 0978698 444 SEABREEZE BOULEVARD
5th Floor, DAYTONA BEACH, FLORIDA 32,118 ; Did
not MARSHALL the FACTS of the EXCULPATORY
evidence of what Detective Dean stated on
TRANSCRIPTS /T8/ through /T14/.

1/ Det. Dean Told TOBLER that "He could not
tell Him what was Going on or why He was there
until Tobler signed the MIRANDA form." How CAN
an OFFICER ARREST, Detain, and then interrogate
TOBLER "without informing Tobler what He was
under ARREST or in Custody" About.

2/ Tobler was Denied the constitutional
Foundation underlying privilege AGAINST SELF
incrimination as the respect to Government State
or federal must accord to Dignity and integrity
of His citizens which is a violation of /13/
CRIMINAL LAW 110 Key 393/1/ per /384 U.S. 436,
86 S.Ct. 1602/ - MIRANDA V. ARIZONA ALSO /16/
CRIMINAL LAW 110 Key 393/1/ compelling SELF
incrimination when : individual swept from
FAMILIAR surroundings into police custody
& surrounded by ANTAGONISTIC FORCES AND Sub-
Jected to techniques of press association employed by
police, cannot be otherwise than under compulsion
to speak. U.S.C.A. CONST. AMEND 5.

The illegal overreaching By Det. Dean
makes the MIRANDA reading that was Allegedly
Read By Det. Dean A nullity. Thus "any" incr-
iminating statements or Physical evidence
obtained thereof is therefore Deemed Being
"Fruit of the poisonous tree". The STATE HAS
tried to ignore this fact, But it is no Doubt

pg. 38

A FACT the STATE CANNOT REFUTE.

## PROLONGED INTERROGATION.

When Det. Dean
FIRST walked into the interview Room, TOBLER was
ASLEEP /T-11/. Det. Dean ASKed APPELLANT TOBLER to
SIT UP and SPEAK with him. See /T-11/ - T-12/ where
each time TOBLER was ASLEEP when Det. Dean took
VARIOUS BREAKS. This FACT on the Record, that SLEEP
DEPRIVATION was effectively employed by Det. Dean
AS a tool illegally to ASSIST Det. Dean in obtaining
an incriminating statement From APPELLANT TOBLER.

/55/ CRIMINAL LAW 110 Key 412.1 /4/ VOLUNTARY
character of Statement /Interrogation and Inve-
stigatory + Questioning/ "FACT OF Lengthly"
interrogation or incommunicado incarceration
Before Statement is made is + Strong evidence
that accused did not VALIDLY waive his Rights.
U.S.C.A. Const. Amend 5.

Compelling - SELF - incrimination
/56/ CRIMINAL LAW 110 Key 393/1/
Any evidence that accused was threatened, tricked
or cajoled into waiver, + will show that he /TOBLER/
did not voluntary waive privilege to Remain
Silent. U.S.C.A. Amend 5.

Det. Dean and the task FORCE that was ASS-
igned to investigate the alleged Robbery while
intentionally employing Illegal tactics to
Get TOBLER to ACTUALLY incriminate himself;
Knew they were violating the Law to Garner a
conviction. Therefore the implications Brought
to Bear Against TOBLER AS evidence to Garner
a conviction were inadmissible in a court
of law. Actually this violation by Det. Dean
and other officers that were in FACT monitoring

pg. 39

the interview and or preparing the case consti-
tutes a civil conspiracy. Anyone who tries to
refute the facts in the record are indeed in error
to do so.

Exclusion of Any evidence

Section 90.403
exclusion on grounds of prejudice or confusion
where relevant evidence is inadmissible if it's
probative value is substantially outweighed
by the danger of unfair prejudice, confusion
of issues, misleading the jury, or needless pre-
sentation of cumulative evidence. The previous
by Tabler's illegally obtained confession and or
self incriminating statements most definently
falls into this section 90.403 as well as section
403.1 Exclusion of relevant evidence on grounds
of prejudice, confusion and waste of time.
Despite + logically relevant evidence being
admissible under section 90.402, and not being
excluded under any of the exclusionary rules
in the code it is inadmissible under section
90.403... the trial court may exclude evidence
under section 90.403 even though it is admissible
under a particular code section).

Although section 90.403 is mandatory in it's
exclusion of this evidence, a large measure of
discretion rests in trial judge determination
to whether the probative value of the evidence is
substantially outweighed by any of the enumerated
reasons.

In the instant case Tabler was alleged to
have been inside a residence that the lawful
owner or lessee was never proffered by the
prosecution to show cause for, a legal deter-

pg. 40

indication of probable cause rather than just mere suspicion of who is legally responsible for alleged "shot gun" that was alleged to be found in safe, used on top of shed of some sort. Which by law would not even be constructive possession by (Tobler) or anyone else alleged to be in home at the time police kicked in the door to said residence.

These are some of the elements that should've been brought to Mr. Tobler's attention by trial counsel prior to offering to Mr. Tobler the plea recommendation by the state.

The state prosecutor's obligation

A criminal prosecutor possesses considerable authority over the evolution of a criminal proceeding. As a result one of the prosecutor's primary responsibilities is to ensure that trials are fair. (Brady v. Maryland, 373 US. 83 87 (1963)) "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."

The constitution, the opinions of the supreme court, the Model Rules of Professional Conduct Rule 3.8 (D) (2009) "The prosecutor in a criminal case shall ... make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense."

Mitigation factors "not known" to Mr. Tobler at the time he took the plea. Like the following...

A) Det. Dean violated Mr. Tobler's 4th Fifth sixth and Fourteenth Amendments through illegal

pg. 41

coercion of self-incriminating statements; during an incommunicado-interrogation of Mr. Tobler, denied Mr. Tobler the right to have counsel appointed and present during interview; and violation of due process.

B/ "Inadmissible Evidence": was used by Det. Dean to confront Mr. Tobler with and subsequently also used to coerce a plea of guilty by the prosecutor.

C/ "Hearsay evidence": was obtained from alleged codefendants, then under restraint at St. Johns County Sheriff's office interview from made self-incriminating statements, and subsequently incriminating Mr. Tobler as well. See Miranda v. Arizona 384 U.S. 436, 86 S.Ct. 1602, /61/. police may make inquiry of persons not under restraint, about Tobler.

D/ Ethical misconduct / prosecutorial misconduct: where Mr. Tobler's Defense counsel, and the prosecution equally conspired together in a concerted effort to deprive Mr. Tobler of certain civil and constitutional rights.

The American Bar Association's standards for criminal justice establishes the obligation that a criminal prosecutor must not only convict the guilty but must also ensure that the innocent are not convicted .... In Berger, 295 U.S. at 88 /" the prosecutor /is in a peculiar and very definite sense the servant of the law, the twofold aim of which is the guilty shall not escape or the innocent suffer."/

*** The A.B.A. standard for criminal justice prosecution function and defense function §3-3.11/A/ 3d ed. 1993/ " a prosecutor should not intentionally fail to make timely disclosure

pg. 42

to the Defense at the earliest feasable opportu-
nity, of the existence of all evidence or information
* which tends to negate the Guilt of the Accused
or mitigates the offense charged or which
would tend to reduce the punishment of the
Accused."

The prosecutions foremost responsibility
is to administer Justice. The U.S. Constitutional
Amend. XIV §1. U.S. V. AGURS 427 U.S. 97, 110-11
/1976/ " There are situations in which Evidence
is obviously of such substantial value to the
Defense that Elementary Fairness requires it
to be disclosed even without a specific request.

### Duty to Disclose

The prosecutions
duty to present Mr. Tobler with the transcript of
the 911 call was violated because Mr. Tobler never
did get the transcripts per Discovery 3.220 Rule
Crim procedure. Neither was Mr. Tobler able to
evaluate depositions, not being a Lawyer or
determine other exculpatory evidence that was
present in the case documentation.

The suppression by the prosecution of
evidence favorable to an accused upon request
violates due process where the evidence is material
Either to Guilt or to punishment, irrespective of the
Good faith or bad faith of the prosecution.....
/T/he Duty to Disclose *** such evidence is
Applicable even though there has been no request
by the accused and that duty encompasses impeach-
ment Evidence as well as exculpatory evidence.
Such Evidence is material " If there is a
reasonable probability that had the evidence
been disclosed to the, the result of the

pg. 43

Proceeding would have been different." Moreover, the Rule encompasses evidence "known only to police investigators and not to the prosecutor. * In order to comply with Brady v. Maryland "the individual prosecutor has a duty to learn of any favorable evidence known to others acting on the Governments behalf in Mr. Tobler's case, including the police.

A weapon allegedly found on top of a shed behind a residence in connection with an alleged robbery does not prove Mr. Tobler had ever personally possessed weapon see. State of Florida v. Anibal Rodriguez, 602 So.2d 1270/17 Florida Law Weekly 8379/ Anibal Rodriguez respondant no. 877859 July 2, 1992 following AFFIRMANCE 7 528.30. 2d 1373 of conviction for attempted 1st Degree Murder, defendants sentence could not be enhanced based on "use of weapon" absent evidence of his personal possession of weapon. See Florida Statue Annotated 8775.087/1/.

Certificate of Oath:

Pg. 44

under penalties of perjury and administrative sanctions from the Department of Corrections including forfeiture of gain time if this petition is found to be frivolous or made in bad faith, I certify that I understand the contents of the foregoing petition that the facts contained in the petition are true and correct and that I have a reasonable belief that the petition was timely filed. I certify that this petition was not duplicate previous motion/petition that have been disposed of by court. I further certify that I understand English and have read the foregoing petition.

/s/ Myron Tobler
DC# V30374
Florida State Prison
P.O. Box 800
Raiford FL 32083

## Conclusion.

Pg.45

In light of the fore-going reasons and arguments and authorities, Appellant respectfully requests this Honorable Court to reverse the trial courts determination.

## Certificate of Service.

I hereby certify that a true and correct copy of the foregoing document has been handed to prison officials for further processing via U.S. mail this 16th Day of August 2021 to: United States District Court, 300 N. Hogan St. Suite 9-150 Jacksonville Florida 32202-4271

S/ Milford Tobler
DC#: UV30374
Florida State Prison
P.O. Box 800
Raiford, FL 32083